**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

HECTOR NOBOA,

Plaintiff,

v. Case No. 6:10-cv-1753-Orl-36DAB

THE SYGMA NETWORK, INC.,

Defendant.
______________________________________/

**ORDER**

This cause comes before the Court on Defendant The Sygma Network, Inc.'s ("Defendant") First Motion for Summary Judgment ("Motion for Summary Judgment") (Doc. 65). Plaintiff Hector Noboa ("Plaintiff") filed a Response in opposition to the motion (Doc. 77). Upon consideration of the parties' submissions, including deposition transcripts, memoranda of counsel and accompanying exhibits, and for the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment.

## I. BACKGROUND

### A. Facts[1]

Plaintiff was hired by Defendant in the position of "selector," a person who gathers orders for shipment, in August 2007. (Parties' admitted facts in Pretrial Statement, filed on February 13, 2012, Doc. 106, p.9.) On August 20, 2007, Plaintiff signed and dated several

---

[1] The undisputed facts are taken from the parties' Pretrial Statement (Doc. 106), and Plaintiff's Response to Defendant's Motion for Summary Judgment, which lists the paragraphs from Defendant's fact section that Plaintiff does not contest. Doc. 77, p.2. The Court has noted where facts are undisputed and where it has determined the facts based on parties' submissions, affidavits, and deposition testimony.

documents regarding Defendant's policies and procedures. *Id.* The documents Plaintiff received upon becoming Defendant's employee include: (1)Acknowledgment and Receipt of Associate Handbook, (2) Sygma Safe-Guidelines for Safety Program Enhancement; and (3) Procedures for Job Related Accidents and Injuries (Doc. 65-Exs.1-3). Plaintiff also received an identification badge with Defendant management team's phone numbers (Doc. 65-Ex. 4), and a copy of the Sygma Network Associate Handbook ("Employee Handbook") (Doc. 65 - Ex. 5).

***1. Defendant's Policy for Reporting Workplace Injuries***

The Employee Handbook addresses the reporting of work-related injuries in three places, and lists the failure to report a work-related injury to a supervisor immediately or by the end of a shift as an example of "conduct that may result in disciplinary action, including written warnings, suspension, demotion, or termination of employment." (Doc. 65-Ex. 5, pp. 6-7). The Employee Handbook explicitly states that "SYGMA does not require a set number of warnings or counseling sessions. Consistent with the levels of discipline described in this handbook, each case is considered on its own facts. In the case of misconduct or violation of SYGMA's policies, immediate termination may be appropriate depending on the facts." *Id.,* pp. 6-7. Under the "Health and Safety" section, the Employee Handbook states: "[a]ny workplace injury, accident or illness must be reported to the associate's manager immediately or by the end of your shift, regardless of the severity of the injury or accident." *Id.*, p. 20. Finally, under the "Workers' Compensation" section, the Employee Handbook states that "[i]n order to protect associates and their families in the event of medical care expenses and loss of wages caused by accidents arising out of and in the course of employment, associates are covered by Workers' Compensation Insurance, which is paid for completely by the Company. This insurance provides for payment of

claims incurred as a result of injury while on the job as specified under state law. It is the associate's responsibility to report immediately any such injury to their supervisor."[2] *Id.*, p. 40.

***2. Plaintiff's Workplace Injury***

Plaintiff testified that he was injured at work on February 25, 2009, and saw a doctor for that injury on Friday, February 27. Deposition of Hector Noboa ("Noboa Dep."), Part II, p.44, line 10; Part I, Doc. 64-1, p.107, lines 14-25. The parties agree that Plaintiff did not report his injury at the time it occurred, prior to leaving work at the end of his shift, or later that evening. Doc. 65, p.4. Plaintiff experienced significant pain from the injury that evening at his home. *Id.*; Noboa Dep., Part I, p.142. Todd Mungovan, Defendant's warehouse director ("Mungovan"), testified that Plaintiff was working in the cooler "and apparently was hurt on a Wednesday and then called in sick on Thursday and then reported the injury on Friday." Deposition of Todd Mungovan ("Mungovan Dep."), Doc. 64-8, p.25, lines 3-6. The parties agree that on the afternoon of Thursday, February 26, Plaintiff continued treatments for a previous, non-work related injury stemming from a car accident in January 2009. Doc. 65, p.4. Plaintiff's medical records from February 26 indicate that he met with Dr. Carlos H. Colombo, M.D. and Kenn Niebrugge, D.C., but did not report his newer work-related injury from the previous day to either health care professional. Doc. 65-6.

On Friday, February 27, the parties agree that Plaintiff reported to work, put on his equipment, and did stretches. Noboa Dep., Part II, p.38, lines 5-8. Plaintiff first reported the pain he was experiencing "[a]round 10:00 something" to a co-worker, Abraham, with whom he

---

[2] Plaintiff indicates that he agrees with the quoted portions from the employee memoranda attached to Defendant's Motion for Summary Judgment. *See* Doc. 77, p.2.

was working. *Id.*, p.48, line 12-18. Upon learning of Plaintiff's injury, Marvin Jarquin ("Jarquin"), the Warehouse Supervisor, met with Plaintiff on February 27, 2009 and together they completed several forms including: (1) Supervisor Investigation of Accident form; (2) Authorization for Services form; (3) Initial Treatment Form; (4) First Report of Injury or Illness; (5) Accident/Illness Investigation Report form; and (6) Injured Workers' Responsibilities Policy. *See* Doc. 65, Exs. 8-13. Jarquin testified that following the completion of the reports, Safety Manager Randy Owen ("Owen") decided that Plaintiff should go to the Solantic Clinic and Jarquin sent him there. Deposition of Marvin Jarquin ("Jarquin Dep."), Doc. 64-Ex. 5, p.57, lines 12-24.

Plaintiff completed the Employee's Report of Work Related Injury Form ("Injury Form") on February 27, 2009, and identified the date of injury as "2/25/2009", and the time of injury as "6:30 pm." Doc. 65, Ex. 7. Plaintiff signed and dated the Injury Form underneath a paragraph which states "I certify that the above information is true and accurate. I understand that falsification is a violation of company policy and subject to disciplinary action up to and including termination." *Id.* Plaintiff indicated that he reported the injury to "Eddit." *Id.* However, Plaintiff testified during his deposition that he does not know anyone named Editt or Eda who worked in Human Resources ("HR") and never reported his injury to anyone with that name or in HR. Noboa Dep., Part II, p. 125, lines 17-19. HR Supervisor Edith Hart testified that although she did not recall the exact day, she remembers Plaintiff speaking with her about his attendance points, and then reporting that he had been hurt two days prior. Deposition of Edith Hart ("Hart Dep."), Doc. 64-3, pp. 16-19. Hart recalled feeling bad for Plaintiff because "you know what the policy is". *Id.*, p.19. She further explained that when Plaintiff said he hurt

himself "a couple of days before" she went to "get someone else", presumably to further report Plaintiff's injury. *Id.*

Plaintiff testified that during the morning of February 27, 2009, he was threatened by Owen, who said "If you say that this accident happened inside the building, I will fire you. If you say this accident happened outside this building, you will keep your job." Noboa Dep., Part I, p. 173, lines 19-23. On February 27, 2009, Supervisors Todd Mungovan and Randy Owen drove Plaintiff to the Solantic Clinic. Doc. 106, p.9. Plaintiff attended a follow up visit at the Solantic Clinic on March 4, 2009, and was released to work without any restrictions or work limitations. Doc. 65-Ex.14.

On March 5, 2009, Defendant completed its investigation of Plaintiff's allegations and determined that Plaintiff would be terminated. Deposition of Terri Vaughn ("Vaughn Dep."), Doc. 64-Ex. 7, p.112, lines 4-7. In making its determination to terminate Plaintiff, Vice President/General Manager Kirk Krajewski conducted an investigation and spoke with Warehouse Manager Todd Mungovan, Safety Manager Randy Owen, and HR Manager Terri Vaughn. Deposition of Kirk Krajewski ("Krajewski Dep."), Doc 64-Ex. 4, p. 137-139. The parties agree that Kirk Krajewski made the ultimate decision to terminate Plaintiff's employment on March 5, 2009. Doc. 65, p.7; Doc. 77, p.2.

**B.  Procedural History**

Plaintiff was terminated on March 5, 2009, filed a Petition for Workers' Compensation Benefits ("Petition") on October 19, 2009, and filed a Voluntary Dismissal of his Petition on January 8, 2011. Doc. 106, p.9; Doc. 65-Exs. 16-17. On November 1, 2010, Plaintiff filed an action in state court for workers compensation retaliation against Defendant, pursuant to Florida

Statute Section 440.205 (Doc. 2, pp.2-3.) Defendant removed the case to federal court (Doc. 1).

## **II. STANDARD**

Summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (emphasis in original). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## **III. ANALYSIS**

### **A. Florida's Workers Compensation Retaliation Statute**

Plaintiff's sole claim against Defendant is brought under Florida Statute Section 440.205, which provides that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce

any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." Fl. Stat. §440.205; Doc. 2. The parties do not dispute that to establish a *prima facie* case under this statute, Plaintiff must show that he: (1) engaged in statutorily protected activity; (2) suffered an adverse employment action; and (3) the adverse action was causally related to the plaintiff's protected activity. *Humphrey v. Sears, Roebuck, and Co.*, 192 F. Supp. 2d 1371, 1374 (S.D. Fla. 2002); Doc. 106, p. 9.

Also, retaliation claims under Florida Statute Section 440.205 are subject to the burden shifting analysis applicable to Title VII claims, meaning that once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant employer to provide a legitimate, non-retaliatory reason for the adverse employment action. *Humphrey*, 192 F. Supp at 1374; Doc. 106, p. 9. The Eleventh Circuit notes that the employer's burden of production at that stage is "exceedingly light". *Coker v. Morris,* 2008 WL 2856699, *4 (N.D. Fla. 2008), *citing Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). The plaintiff then bears the burden of persuasion that the proffered reasons are pretextual, by showing that the offered reason for the adverse action has no basis in fact, was not the true motivating factor, or was insufficient to motivate the decision. *Humphrey*, 192 F. Supp. at 1374-75.

## <u>B.</u> <u>Plaintiff Has Established a Prima Facie Case</u>

### *1. Plaintiff was engaged in a protected activity*

The Court finds that Plaintiff engaged in protected activity when he reported his work related injury, filled out the Defendant's corresponding paperwork, and was taken to a clinic by supervisors pursuant to Defendant's established procedure for workers' compensation injuries.

Indeed, as soon as Defendant learned that Plaintiff claimed he injured himself at work, SYGMA promptly had him complete workers' compensation paperwork to report his injury, and two of his supervisors, Owen and Mungovan "drove him to the workers' compensation health care provider to ensure he received any medical treatment he might need." Doc. 65, p.13.

The Court is not persuaded by Defendant's argument that either the terms of the statute or the decision in *Bruner v. GC-GW, Inc.*, 880 So. 2d 1244 (Fla. 1st DCA 2004) compel a plaintiff to file an official workers' compensation claim to be protected by the retaliation statute. Doc. 65, p.11. First, the statute clearly protects an "employee's valid claim for compensation ***or attempt to claim compensation*** under the Workers' Compensation Law," Fl. Stat. §440.205 (emphasis added). In construing this statute, the Court looks to the statute's plain language. Because the language of the statute is clear and unambiguous, it must be given its plain and ordinary meaning. The statute at issue here protects attempts to claim compensation under the Workers' Compensation Law. The undisputed evidence establishes that on February 27, 2009, Plaintiff met with Warehouse Supervisor Marvin Jarquin and filled out various official accident and injury report forms, and was driven by his supervisors to the Defendant's chosen clinic for medical treatment. Doc 64, Ex. 5; Doc. 65, Exs. 8-13. Applying a liberal construction of this statute, the Court determines that Plaintiff attempted to claim compensation under the Workers' Compensation Law. *See Broward v. Jacksonville Med. Ctr.*, 690 So.2d 589, 591 (Fla. 1997) ( "Florida's workers' compensation laws are remedial in nature" and should be liberally construed in favor of granting access to the remedy provided by the Legislature.)

Moreover, contrary to Defendant's contention that *Bruner* defines the protected activity as actually filing or threatening to file a workers' compensation claim, (Doc. 65, p.11), the decision does not define protected activity in this manner. *Bruner v. GC-GW, Inc.*, 880 So. 2d 1244, 1248 (Fla. 1st DCA 2004). In fact, *Bruner* advocates an expansive reading of the statute, finding that statutory protection extends to subsequent employers, such that an employer cannot discriminate against an employee because of their prior workers' compensation claims against former employers. *Id.*, at 1251. Moreover, Florida courts routinely interpret section 440.205 in a manner consistent with its intent to prevent the chilling effect of filing workers' compensation claims. *Bruner*, 880 So.2d at 1249 ("[e]xempting subsequent employers from the statute would allow them to defeat the Legislature's intent by firing or threatening to fire workers who had exercised their statutory rights."); *Smalbein v. Volusia County School Board*, 801 So.2d 169, 170 (Fla. 5th DCA 2001)(rejecting a statutory construction which would require the workers' compensation claims to be successful because "interpreting 'valid' as 'compensable' thwarts the purpose and intent of the Legislature to prohibit retaliation"); *Allan v. SWF Gulf Coast, Inc.*, 535 So.2d 638, 639 (Fla. 1st DCA 1988) (noting that specific retaliatory intent is not required by the express statutory language of section 440.205).

***2. It is undisputed that Plaintiff suffered an adverse employment action.***

Given the parties agree that Plaintiff's March 2009 termination qualifies as an adverse employment action, the second element of a *prima facie* case has been established. Doc. 77, p.4.

***3. There is sufficient evidence to show a causal connection between the protected activity and the adverse employment action.***

Generally, close temporal proximity between the protected conduct and the adverse employment action is sufficient circumstantial evidence to demonstrate a causal connection between the two. *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).[3] However, when there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct, temporal proximity alone is insufficient to establish causation. *Id.*

According to Defendant, the decision to terminate Plaintiff was made following Kirk Krajewski's independent investigation, which included speaking with many of Defendant's employees and reviewing documents including Plaintiff's Injury Form in which Plaintiff reported his injury two days after the accident. Doc. 65, pp. 13-14; Krajewski Dep., pp. 138-39. Further, Defendant explains that upon learning of Plaintiff's injury, it "promptly had [Plaintiff] complete workers compensation paperwork to report his injury, and two of his supervisors, Randy Owen and Todd Mungovan even drove him to the workers' compensation health care provider to ensure he received any medical treatment that he might need." Doc. 65, p.13. Therefore, although Defendant correctly notes that temporal proximity is insufficient when there is "unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct," *Brungart*, 231 F.3d at 799, Defendant here has elaborated upon Krajewski's knowledge of the Plaintiff's protected activity. Indeed, "a plaintiff can show that the two events are not

---

[3] The Eleventh Circuit evaluates claims of retaliation under the Family Medical Leave Act (FMLA), in the absence of direct evidence of discrimination, using the burden-shifting framework established by the Supreme Court for Title VII retaliatory discharge claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Although neither party mentions it in citing to *Brungart* and other Eleventh Circuit cases, these cases analyze a retaliation claim under FMLA, not Florida Statute section 440.205.

wholly unrelated if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010). Accordingly, given the undisputed close temporal proximity between Plaintiff's reporting of his injury and compliance with Defendant's workers' compensation procedures and his termination, Doc. 106, p.9, there is sufficient evidence to show a causal connection.

As each of the elements has been established, the Court finds that Plaintiff has made a *prima facie* case for workers compensation retaliation in violation of Florida Statute Section 440.205.

**C.    Defendant Has Established a Legitimate Reason for Plaintiff's Termination**

Once a *prima facie* case has been demonstrated, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The Court is persuaded that Defendant has a clear policy requiring its employees to immediately report workplace injuries, and that this policy provides a legitimate reason for Plaintiff's termination on March 5, 2009.

Given the extensive documentation of Defendant's policy, *see* Doc. 65, exs. 1-5, the Court is unpersuaded by Plaintiff's argument that Defendant's policy for failing to report workplace injuries is "far from clear". Doc. 77, p. 9. Specifically, the Employee Handbook, which Plaintiff acknowledged receiving by signature on August 20, 2007, Doc. 65-Ex.1, reiterates in several places that disciplinary actions, including termination, will be taken for an employee's failure to report a work injury immediately or by the end of the shift, regardless of the severity of the injury. Employee Handbook, Doc. 65-Ex. 5, at pp. 6-7, 20, 40. Plaintiff emphasizes testimony by

Defendant's employees that disciplinary measures for not reporting workplace injuries include termination but not to the exclusion of other disciplinary possibilities within Defendant's discretion. *See* Mungovan Dep. p. 61, lines 5-25; Vaughn Dep., p. 42 line 5-43 line 1. However, as Defendant's documentation clearly states that termination can result from an employee's failure to timely report a workplace incident, the Court finds that regardless of whether other disciplinary options exist, the Defendant has established a legitimate reason for Plaintiff's termination in this case.

**D. Plaintiff Has Not Created a Genuine Issue of Fact Regarding Pretext**

After a defendant provides a legitimate, nondiscriminatory reason for termination in response to the plaintiff's *prima facie* showing, the plaintiff bears the burden of persuasion that the proffered reasons are pretextual. *Humphrey*, 192 F. Supp at 1374 (plaintiff's claim of retaliation did not withstand summary judgment where she did not introduce evidence to show the reason for her termination was not actually the violation of a particular policy); *McDonnell*, 411 U.S. at 802. To establish pretext, a plaintiff must proffer evidence that would permit a reasonable fact finder to conclude that Plaintiff's alleged misconduct was not the real reason for the adverse employment action. *Torres v. Eagles Technologies*, *Inc*., 2010 WL 2243700, *6 (M.D. Fla. 2010) (plaintiff's failure to proffer circumstantial evidence of pretext sufficient to permit a reasonable fact finder to conclude that his positive drug test was not the reason for his termination was fatal to his claim of retaliation under Florida's Whistleblower Act). A plaintiff may carry this burden by showing that the reason offered for termination had no basis in fact, the reason was not the true factor motivating the termination decision, or that the stated reason was insufficient to motivate the decision. *Holston v. The Sports Authority, Inc*., 136 F. Supp.2d 1319, 1338 (N.D.Ga. 2000).

Also, the law is clear that an employee's own evaluation and opinion is insufficient to establish pretext. *Torres*, 2010 WL 2243700 at *7; *Standard v. A.B.E.L. Services*, *Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998).

Although Plaintiff states in a conclusory manner that "[p]retext in this case is abundant," he has failed to provide any evidence that would lead a reasonable fact finder to conclude the legitimate business reason, his failure to comply with Defendant's policy, was not the reason for his termination. Doc. 77, p.7-8. Plaintiff seems to argue that three reasons support the existence of pretext: (1) Defendant's Safety Manager Randy Owen threatened Plaintiff to not report his injury; (2) workplace rumors and jokes about not reporting workplace injuries abounded; and (3) Defendant was economically motivated to limit workers' compensation claims.[4] *Id.* None of these offered facts or reasons, however, even when construed in the light most favorable to the nonmoving party, show evidence of pretext. First, Plaintiff testified that during the morning of February 27, 2009, he was threatened by Randy Owen, who said "If you say that this accident happened inside the building, I will fire you. If you say this accident happened outside this building, you will keep your job." Noboa Dep., Part I, p. 173, lines 19-23. Given this discussion occurred two days after Plaintiff's workplace injury on February 25, Owen's statement is actually an accurate representation of Defendant's policy with respect to workplace injury reporting. The policy allows for termination upon a failure to report a workplace injury immediately or by the

---

[4] Additionally, Plaintiff filed the affidavit of Eric Kinney, Defendant's former employee, on January 25, 2012 (Doc. 95), seemingly in an attempt to establish pretext for Plaintiff's termination. Upon reviewing Defendant's Motion to Strike the Affidavit of Eric Kinney (Doc. 105), this Court found that this affidavit was untimely, and therefore it was stricken. *See* Order granting Motion to Strike (Doc. 125).

end of a shift. It is undisputed that Plaintiff did not follow this policy.  Thus, if anything, Owen's statement, although inartfully worded, reinforces Defendant's proffered legitimate reason for Plaintiff's termination.  Second, Plaintiff's testimony regarding rumors and jokes about not reporting worker's compensation accidents for fear of being fired also fails to establish evidence of pretext.  Doc. 77, p.7; Noboa Dep., Part II, pp. 101-03, 105.  Plaintiff has provided no admissible evidence or statements to support the rumors.  The record before this Court, as reflected in Defendant's  policy and the documents Plaintiff received and signed, allows Defendant to terminate an employee for failing to timely report a workplace injury. Termination is not a rumor, but rather a realistic consequence of violating Defendant's policy.  Third, Plaintiff notes that several of Defendant's employees testified to the safety incentives in place for employees, which alludes to an economic benefit for Defendant to reduce the costs of workplace safety.  Doc. 77, p.7; Vaughn Dep., p. 101, lines 17-25; Hart Dep., p. 81, lines 8-18.  Initially, the Court notes that if it were economically advantageous to discourage reporting injuries then Defendant's policy of mandatory reporting of any workplace injury would be contrary to such an interest.  Further, Defendant's economic incentives with respect to its safety policies are irrelevant to the issue of pretext and outside the realm of this Court's analysis.  Indeed, the Eleventh Circuit affirms that "Federal Courts do not sit as a super-personnel department that reexamines an entity's business decisions ... rather [the] inquiry is limited to whether the employers gave an honest explanation of its behavior."  *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

     A plaintiff's subjective belief that he was retaliated against is insufficient to establish pretext, and pretext cannot be created by simply questioning the employer's legitimate reason. *Sabatier v. Suntrust Bank*, 2008 WL 108796, *10 (S.D. Fla. 2008); *Pennington v. City of*

*Huntsville*, 261 F.3d 1262 (11th Cir. 2001). Here, Plaintiff's references to confusion regarding Defendant's injury reporting policy, rumors about the policy, and allegations that the safety policies are financially motivated fail to establish pretext that would convince a reasonable fact finder that Plaintiff was terminated for any reason other than Defendant's documented policy. Plaintiff has failed to show that the reason given for his termination had no basis in fact, was not the true reason for his termination, or that the stated reason was insufficient to motivate his termination.

## IV. CONCLUSION

Although Plaintiff has established a *prima facie* case for retaliation under Florida Statute Section 440.205, he has not shown that Defendant's legitimate business reason for his termination was not the real factor motivating Defendant's decision. Plaintiff's claim of retaliation does not withstand Defendant's Motion for Summary Judgment. As no genuine issues of material fact exist, Defendant is entitled to a judgment in its favor as a matter of law.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. Defendant The Sygma Network, Inc.'s First Motion for Summary Judgment (Doc. 65) is **GRANTED**.

2. The Clerk is directed to enter judgment in favor of The Sygma Network, Inc. and against Plaintiff Hector Noboa.

3. All pending motions are denied as moot

4. The Clerk is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, on April 25, 2012.

Charlene Edwards Honeywell
United States District Judge

**COPIES TO**:

COUNSEL OF RECORD